(48 Misc. Rep. 327)

### SAMMIS v. DAY.

#### (Nassau County Court.　September, 1905.)

**1. LANDLORD AND TENANT—ACTION FOR RENT—DEFENSES.**

　　In an action before a justice for rent, payable in advance under a lease for a year from May 1, 1903, plaintiff alleged that defendant occupied the premises until April 1, 1904, when the lease was surrendered, and that the rent for the four preceding months was unpaid.　Defendant alleged a prior surrender of the lease.　*Held*, that the affirmative was with defendant to maintain such defense.

　　[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Landlord and Tenant, § 926.]

**2. APPEAL—REVIEW.**

　　A judgment based on conflicting evidence will not be disturbed.

**3. LANDLORD AND TENANT—SURRENDER OF LEASE.**

　　Evidence *held* insufficient to show surrender of lease and acceptance by landlord, relieving tenant from liability thereunder.

**4. SAME—EVIDENCE.**

　　In an action for rent, where defendant pleaded a surrender, evidence that a "To Let" sign was put upon the house at a certain date was no proof that it was posted by the landlord or that he authorized it to be posted.

**5. SAME—ENTRY BY LANDLORD.**

　　Where, in an action for rent, defendant claimed a surrender of the premises, and attempted to show that plaintiff had entered on the property to repair it, the burden was on defendant to show that the entry for purpose of repair was made before the last installment of rent was due.

Appeal from Justice Court.

Action by Mary Sammis against Alfred M. Day.　From a judgment of a justice in favor of plaintiff, defendant appeals.　Affirmed.

Lincoln B. Haskin, for appellant.

Maxson & Jones, for respondents.

JACKSON, J.　This is an appeal from the judgment of a Justice's Court in favor of the plaintiff, rendered after a trial without a jury, for $112.50 damages and' costs.　The complaint alleges:

"That heretofore, and on May 1, 1903, the plaintiff leased to the defendant certain premises on the easterly side of Franklin street in the village and town of Hempstead, Nassau county, New York, bounded and described as follows: On the west in front by Franklin street, on the north by land of Nichols, on the east by other land of the plaintiff, and on the south by land of Gildersleeve and others, for the term of one year, to commence May 1, 1903, at the yearly rental of $300, payable monthly in advance.　That heretofore, and on or about the 1st day of May, 1903, the said defendant moved into and occupied the said premises as tenant of the plaintiff under said lease."

The foregoing allegations stand admitted.　The complaint further alleges:

"That the aforesaid premises remain in the possession and under the control of the defendant as a tenant of the above-mentioned plaintiff during the said term and until April 1, 1904, when the said lease was surrendered, and the relation of landlord and tenant was ended."

These allegations are denied. There is also an allegation that the rent for the months of December, 1903, and January, February, and March, 1904, remains unpaid, and amounts to $100. This is denied, but there is no affirmative allegation of payment.

The amended answer sets up two affirmative defenses. As the defendant offered no evidence to sustain the first, reference is here made only to the second.

At the opening of the case the affirmative, then, was with the defendant to maintain his second defense that there has been a surrender of the lease and acceptance by the landlord of the surrender before any of the rent sued for in this action became due. On the trial, however, the plaintiff assumed the affirmative, offered in evidence the lease, and examined witnesses. It is immaterial in what order the testimony in the case was introduced, except that we shall follow the logical order in considering it here, and first consider what evidence there is which tends to establish the defense in question. A surrender may be express or it may be implied, and the defendant claims that there was an implied surrender in this case. "A surrender of premises is created by operation of law when the parties to a lease do some act so inconsistent with the subsisting relation of landlord and tenant as to imply that they have both agreed to consider the surrender as made." Gray v. Kaufman, D. & I. Co., 162 N. Y. 394, 56 N. E. 903, 49 L. R. A. 580, 76 Am. St. Rep. 327.

The following facts are claimed by the defendant as having been proved by the testimony, and as inconsistent with the relation of landlord and tenant: (1) Before December 1, 1903, the keys were delivered by the defendant to the plaintiff, who accepted them. (2) Plaintiff repaired the house before April 1, 1904. (3) After taking the keys plaintiff was at all times working in her own interest. (4) When the plaintiff took the keys, she took them out of the hands of defendant's agent, and placed them in the hands of her own agent. (5) After November 15, 1903, Mr. Brierly, the plaintiff's agent, acted as the agent of the plaintiff, as owner, and not as the agent of the defendant. (6) Between November 15, 1903, and December 1, 1903, plaintiff refused to let defendant's agent enter the house to get property. (7) The plaintiff, before December 1, 1903, posted a "To Let" sign on the premises.

As to the first, third, fourth, and fifth points above claimed by the defendant as proved, the testimony conflicts, and a judgment should not be disturbed merely because there is such a conflict.

The sixth and seventh points above stated are supported by the following uncontradicted testimony:

Plaintiff testified:

"I know Nettie Giles, defendant's housekeeper. She may or may not have called at my house, a few days before December 1, 1903, and asked me for the key in question to go into the house to get a piece of linoleum which was on the bathroom floor. I told her it was fastened there. I had no rent, and I thought it was mine. I did not let her have the key or the linoleum. She did not tell me that Day had told her to come for the linoleum. I knew Nettie Giles had lived in said house all the while he lived there."

Nettie Giles testified:

"Q. Did defendant ever tell you to go to the house in question a few days after November 15, 1903, and before December 1, 1903, and get a piece of lino-

leum that was on the bathroom floor? (Objected to as leading, incompetent. Overruled. Exception.) A. Yes; I did not go to the house. I went to Mrs. Sammis. I asked her if I could have the key and get the linoleum: She said, 'No,' she thought that belonged to her for cleaning the house. I saw one of Brierly's 'To Let' signs on the house within six weeks after Mc-Coy moved out."

Cross-examination:

"Q. Do you know when that 'To Let' sign was put on that house? A. I think it was November, 1903."

This testimony does not prove what the appellant claims for it, namely, that between November 15, 1903, and December 1, 1903, plaintiff refused to let defendant's agent enter the house to get property. There is no proof that defendant's agent could not have entered without permission. A contention apparently arose over the linoleum, and not over the possession of the premises. So far as the case shows, the defendant or his agent might have entered the premises at any time, or might then have been in possession. Defendant's agent was told by him to go to the house in question. Did he recognize the landlord as in possession, and tell his agent to go to the landlord and ask permission to enter the house? On the contrary, he assumed to be in possession himself. The agent, instead of following instructions and going to the house, went to the landlord and requested permission to get the linoleum. The reason the landlord gave on the trial for refusing a key to enable Miss Giles to get the linoleum, whether sufficient or not, is: "I had no rent, and thought it was mine." Miss Giles' version—and it seems the proper one, as the defendant paid the rent to December 1, 1903—is:

"She [Mrs. Sammis] said she thought that [the linoleum] belonged to her for cleaning the house."

While the testimony tends to show acts of dominion over the premises exercised by the plaintiff inconsistent with the relation of landlord and tenant, it is not conclusive, and I cannot say that the justice erred in finding that on this point the defendant failed to sustain the burden of proof.

As to point 7, to wit, the posting of the "To Let" sign on the premises before December 1, 1903, the testimony of Miss Giles reads:

"I saw one of Brierly's 'To Let' signs on the house within six weeks after McCoy moved out. Q. Do you know when that 'To Let' sign was on that house? A. I think it was November, 1903."

Here is no proof that the plaintiff posted the sign or authorized it to be posted. It is admitted that Mr. Brierly was her agent for renting and collecting the rent, but that did not prevent Brierly from being defendant's agent as well. In fact the defendant testified:

"I went to all agents and asked them to find tenants for premises."

Beside the weakness of these points of his defense, defendant also met another difficulty. At the beginning of the trial the plaintiff offered in evidence a written lease as the "Original" lease between the plaintiff and defendant, and admitted in the amended answer. This lease, Exhibit A, contained the following stipulation:

"If the said premises or any part thereof shall become vacant during said term, the party of the first part, or her representative, may re-enter the same, either by force or otherwise without being liable to any prosecution therefor, and relet the said premises as the agent of the said party of the second part and receive the rent thereof, apply the same to the payment of such expense as she may be put to in re-entering and then to the payment of the rent due by these presents, and the balance, if any, to be paid over to the said party of the second part, who shall be liable for any deficiency."

The defendant objected to the reception of this paper by the justice on the ground that sufficient evidence had not been produced to justify its reception. This objection, it seems to me, was too general, and the lease was properly received in evidence, as no further question as to the identity of the lease was raised during the trial, although the defendant was present and was sworn as a witness in his own behalf. Therefore, the act of re-entry and the attempts to relet, claimed by the defendant as proved, and as proof of an implied surrender, were, if proved by the defendants, express authority.

There remains point 2 to be considered. It is that plaintiff repaired the house before April 1, 1904. Exactly when or in what month repairs were made, or what these repairs were, does not appear from the testimony. A landlord has the right to re-enter to make such repairs only as are necessary to preserve the property. The repairs in question do not appear to have been of that class. The proof is conclusive that they were made before April 1, 1904, and there seems to be no argument that the repairing was consistent with the relation of landlord and tenant. The written lease, which authorizes a reletting, does not authorize repairing, nor can such authority be implied from the lease. The burden of proof that these repairs were made was on the defendant. The burden, also, of proving the time when these repairs were made, was on the defendant. The testimony shows only that they were made before April 1, 1904. It might have been that they were made after March 1, 1904, on which date the last installment of rent was due.

Therefore neither by reason of these repairs made by the landlord should the judgment be reversed. The judgment should be affirmed.

Judgment affirmed.